BUSHMAN CONSTRUCTION COMPANY, APPELLANT, V. SANITARY DISTRICT NO. 1 OF LANCASTER COUNTY, APPELLEE.

293 N. W. 380

FILED JULY 26, 1940. No. 30775.

*Claude S. Wilson, Roy F. Gilkeson* and *Hymen Rosenberg,* for appellant.

*Peterson & Devoe* and *Chauncey E. Barney,* contra.

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ., and BLACKLEDGE, District Judge.

CARTER, J.

This is an action to recover the amount claimed to be due the plaintiff, Bushman Construction Company, from the defendant, Sanitary District No. 1, on a contract for the construction of a bridge across Salt creek in Lancaster county, Nebraska. Plaintiff appeals from the action of the trial court in directing a verdict for the defendant on the second and third causes of action set forth in its petition.

The record discloses that on May 28, 1935, defendant accepted plaintiff's bid of $21,175 for the construction of a bridge according to plans and specifications, including channel excavation and the removal of the existing structure. A written contract was thereupon executed by the contracting parties. The two causes of action involved herein arise as the result of a dispute over the rate of payment to be made for 167.08 cubic yards of excavation for the piers supporting the bridge.

The contract defines "channel excavation" as follows:

"Channel excavation shall consist of all material, wet or dry, above the grade of the channel section."

"Wet excavation" is defined by the contract to be: "Wet excavation shall be defined as consisting of all materials below the normal ground water elevation at the time construction is started, and below the established grades for the new channel section of Salt creek."

It is the contention of plaintiff that the 167.08 cubic yards of excavation in question is wet excavation within the terms of the contract, for which plaintiff is entitled to $10 a cubic yard. The defendant insists that it is channel excavation only, for which plaintiff is entitled to 15 cents a cubic yard.

The controversy arises out of a change in the plans and specifications regarding the amount of channel excavating to be done. The plans and specifications provided for channel excavation to a level 7.66 feet lower than the level agreed upon in the change of plans at the points where the two bridge piers were to be constructed. In view of the fact that the changed plans provided for the channel excavation to the level of the normal ground water elevation at the time construction was started, it is contended by plaintiff that the cubic yards of wet excavation were increased from 191.2 to 358.28, a difference of 167.08 cubic yards, the basis for the present litigation.

The claimed wet excavation involved herein is the material which laid below the normal ground water elevation and below the channel grade established by the supplemental oral agreement, but above the channel grade fixed by the original contract, which was necessary to be removed in the construction of two concrete piers to sustain the bridge. All of this excavation being below the normal ground water level, it was necessary to construct cofferdams to keep the water out while the concrete piers were being constructed. The cofferdams were each 32 feet 9 inches long and 9 feet wide and, due to the change in the channel excavation level, they each had 7.66 feet of additional excavation below the normal ground water level, resulting in the 167.08 cubic

yards of claimed wet excavation which, except for the change in plans, would have been classified without question as channel excavation. No mention of any change in the classification of materials to be excavated as estimated and fixed by the original contract was made at the time the supplemental oral agreement was entered into.

It must be remembered that the contract provides for the construction of a bridge and the excavating necessary to permit its construction. There is no agreement to make any excavations, except adjacent to the bridge. This being true, the ground water level would remain the same, whether or not the channel excavation was as provided by the written contract or as changed by the subsequent oral agreement. If the excavations had been made in accordance with the original written contract, it would have resulted in a deepening of the river channel in the proximity of the bridge, but not in a lowering of the ground water level. It is evident therefore that there was no change in the physical condition of the excavated materials resulting from the subsequent change in the written contract. We fail to see how a change in the channel grade, which did not affect the ground water level or the physical condition of the materials to be excavated, could operate to change the classification of the various types of excavation provided for in the written contract, in the absence of a supplemental agreement with respect thereto. It certainly was not within the mutual contemplation of the parties that defendant should pay $1,645.74 additional on its contract by adopting defendant's suggestion that the removal of 2,317 cubic yards of channel excavation was unnecessary and useless under the conditions existing at the site of the bridge. To so hold without any direct evidence to sustain it would amount to the making of a new contract between the parties, and this, of course, is not within the province of the court. Any changes in the contract were by its terms required to be in writing. We think this provision was inserted as a protection against such a situation as exists in the present case. Since the written contract had been modified by oral

agreement to change the grade of the river channel, it is urged that a change with respect to the classification of materials to be excavated could likewise be made. The first oral modification, however, has been fully carried out and the contract fully completed and approved in accordance therewith. Under such circumstances, neither party is in a position to rely upon the provision of the contract that all changes must be in writing. But in the situation before the court, such condition does not exist and defendant has in no way deprived itself of the benefit of this provision.

The fact that it was mutually agreed that 2,317 cubic yards of the estimated 3,500 cubic yards of channel excavation were not to be removed does not relieve the plaintiff from its contract to remove the balance, including the 167.08 cubic yards in question, at the specified contract price. We think the physical facts surrounding the existing situation at the time the contract was entered into indicate a clear intention on the part of the contracting parties to treat the disputed excavations as channel excavations within the purview of the contract, and that there was no mutual understanding that this was to be changed by the subsequent oral agreement. The oral agreement was intended as a modification of the original contract only as to the amount of channel excavating to be done. It did not purport to change, nor did the parties at the time intend to modify, any other provision in the contract. The trial court properly gave effect to the mutual intention of the parties and directed a verdict for the defendant.

AFFIRMED.